Gaston,
Judge, after stating the case as above, proceeded : — These are the allegations and this the testimony, on which the cause is brought to a hearing. It is to be regretted that the proofs have not been more full, as it is quite probable that by reason of this defect, we are not possessed of that accurate knowledge of the facts which would enable us to do precise justice between the parties. Upon that testimony, however, as connected with the pleadings, it is our duty to pronounce the facts such as they appear to us either by direct proof, or by fair inference. It may not be amiss here to notice an objection that has been taken to the affidavit annexed to the bill of the plaintiffs. It is said to be irregular, because sworn to, not before any commissioner appointed under the authority of this state, but before a Master in Chancery in New York, and that were it regular in point of form, it is not evidence on the hearing. If the objection to the irregularity of the affidavit, merely as an affidavit, were well founded, it should have been availed of by the defendants before answering the bill, and comes too late afterwards. *5 Bufconsidered as an affidavit, it is sufficiently regular, according to established Chancery - usage. Braham v. Bowes, 1 Jacob & Wal. 296. We do not regard it as evidence upon the hearing. When a bill -vis brought, not for discovery merely, but also for relief, the practice of the Court generally requires that an .affidavit of the loss of the written instrument, should be annexed ,• because it is this 'loss which constitutes the reason for changing the forum, and transferring to a Court of Equity, an ordinary case for relief in the courts of law. The want of such an affidavit would be a good ground of demmfer. But when matters of fact are charged and denied by- the pleadings of the parties, and the Court is to ascertain the truth of the matters thus put in issue, the proof must -come from competent witnesses ; and as a general rule a man is not more competent to prove his own case in' a Court of Equity than in m court of law.
An affidavit sworn to before a master in chancery in another state, who was not a commissioner appointed by this state is regular.
The- Court is satisfied that the plaintiffs- were the lawful holders of these notes. There is no question but that one of them had the bona fide possession of the notes, cut them in two, and transmitted to the other plaintiff the respective halves by mail on different days, viz. on the 8th and 10th of February, 1831. The next information, which we have about them, is on the 18th Óf May, following; when the first set of half notes was sent to the Bank at Raleigh by Lemesurier claiming .them as the agent of the plaintiffs, and requiring payment of the whole amount in their behalf, or if this was refused, to return the half notes. There' is no proof of what was* done upon this demand, but it is alleged by the plaintiffs that they received a partial payment of one half of the amount, and the defendants allege that they paid one half to Lemesurier in discharge of the entire demand. The fact of an actual receipt of one half by the plaintiffs from the defendants on account of thesa.notes is therefore not disputed, although the character of this payment is very differently represented by the parties. In defect of any other-explanatory or contradictory evidence, the necessary inference from these facts, is, that the notes belonged to the- plaintiffs. The proof of loss has been objected to as defective and insufficient. If *6 the case were one of the loss of an entire note, the possession whereof, might expose the bank to a rightful demand payment from a subsequent bona fide holder, where there might be an obvious motive and a strong temptation for pretending a loss which had never happened, we should probably require more full proof. This we suppose might be obtained through the post office establishment at New York, which could show whether the parcel mailed at Scotland Neck on the 10th of February, reached New York; and if it did, whether the letters inclosed, corresponded to those set forth in the way-bill. The division of the notes — their being sent by different mails— the production of, and delivery to the defendants, of the first set of half notes by the plaintiffs — the lapse of time without any presentation of, or demand by, any body on account of the other set — and the want of any rational motive for keeping back the letter, if it had come to the hands of the plaintiffs — constitute a mass of evidence which induces us to pronounce this allegation fully proved. It is in truth, rather a case of destruction than of loss of the notes. There is no proof, on the part of the plaintiffs, of a descriptive list having been forwarded to the bank and to its branches, or of an indemnity being offered previously to suit; and none on the part of the defendants of the usage of the bank to pay on half notes, half the sum for which the notes were given, nor, if such usage existed, that it was known to the plaintiffs; nor of the halves received having been burned by the bank, nor of any circumstances rendering it probable that the other halves may have been received, and destroyed also. The Court, therefore, must regard all these alleged facts, if they be material, as not existing in the case.
The defendants have not in their answer, nor upon the hearing, objected to the jurisdiction of a Court of Equity, because that the plaintiffs, if entitled to relief, had remedy at law. On the contrary, they insist that there is no remedy at law, for the holder of a note, who by any mischance is unable to present the note itself for payment, and that whenever he is entitled to redress, he can obtain it only through the intervention of that Court, whose pecu *7 liar province it is, to relieve 'against accident. There are few subjects on which there have been such inconsistent " decisions, and on which such marked changes of judicial opinion have occurred, as the competency of Courts of law, to give relief in cases of lost instruments, and the right of a Court of Equity to take jurisdiction of such claims. Up to the period of our separation from the mother country, it was considered as beyond question, that no action would lie at law, upon a lost bond, because of the indispensable necessity in every such action to make a proferí of the instrument declared on; and it was the invariable usage to seek relief in equity, which, in a proper case, never refused to give it. Within the last fifty years, Courts of law in England, have allowed such actions to be maintained, holding it sufficient to dispense with the necessity of a profert, to state that the obligation has been lost by time and accident, or destroyed ~by other casualty. Notwithstanding this assumption of jurisdiction by Courts of law, the Courts of Equity have continued to hold cognizance of such demands, because they once had acknowledged jurisdiction of them; because of the ability of these /Courts, where there are more persons than one liable to the same debt with mutual remedies against each other, to make a complete and effectual adjustment among all the parties liable; and because of the difficulty at law of securing an adequate indemnity. With regard to bills of exchange and other negotiable instruments, there were many inconsistent adjudications in both Courts. In the case of Tenesy v. Gory, decided in the reign of Charles 2, and quoted with approbation by Lord Haedwicke in Walmsley v. Child, 1 Ves. Sen. 345, a bill of exchange was drawn on the defendant and endorsed to the plaintiff, by whom it was lost or mislaid, as appeared by the affidavit annexed, and the bill prayed thaf the defendant might be decreed to pay the plaintiff the money, the plaintiff first giving the defendant security to save him harmless, which was so decreed but without damages or costs. In 1749, in fhe' case of Walmsley v. Child, above mentioned, Lord Haedwicke entertained no doubt, but that an action at law, would lie on lost bank nates, but-thought that the *8 plaintiff might also sustain a bill in equity for relief, upon annexing an affidavit of the loss and submitting to give securjqy_ In Glynn v. Bank of England, 2 Ves. Sen. 38, he stated, that upon a lost note there was a clear relief at law, and that a man is not entitled to bring a bill in equity, in general, on a lost note, but that he might do so under special circumstances. What these are he does not state, but he seems disposed to exercise jurisdiction in the case before him, which was that of a bill brought by the representatives of a dead man, touching several bank notes alleged to be lost, praying a decree for the payment of them, upon offering to give security to refund and indemnify the defendants in case any other claim should be made upon them. In 1810, in Mossof v. Eadon, 16 Ves. Jun. 430, where a note before it became due was cut in two, and one of the halves lost, Sir William Grant, refused to give relief, notwithstanding a full conviction that the merits were with the plaintiff, because there was clear relief at; law, and that he was fearful to break down the barriers;, which separated the jurisdiction of Courts of law andl Courts of Equity. In 1817, in Davies v. Dodd, 4 Price, 176, Chief Baron Richards, gave a decree in favour of an, indorsee against an acceptor of a lost bill of exchange, stating that it did not become him to say whether the plaintiff had or had not a remedy at law, for if he had, he has also a remedy in equity ; and if he had commenced an action at law, the defendant might have restrained him by injunction from proceeding, because a Court of law could not compel him to give security, which a Court of Equity would hold that he was entitled to. He added, “ there are many cases of this nature, particularly where bonds have been lost, where the parties have come into equity on that very ground, and the case of a negotiable bill is yet stronger.”
There were many adjudications at law, in which plaintiffs recovered upon lost bills and notes, and among the latest, one before Lord Tenterden, (then Chief Justice Abbott,) in 1826. Glover v. Thompson, Ryan & Moody, 403, (and 21 Eng. C. L. Rep. 472.) But in 1827, in the ease of Hansard v. Robinson, 7 Bar. & Cres. 90, (and 14 *9 Eng. C. L. Rep. 20,) the Court of King’s Bench, through Lord Tenteiiden, pronounced their unanimous judgment, that an indorsee could not recover at law against an acceptor on a bill lost, after it became due, and after the plaintiff had required payment, and offered an indemnity. The Court declare that it was impossible to reconcile the decisions, and therefore recourse must be had to principle; that according to the custom of merchants, the holder of the bill was to present the instrument at its maturity to the acceptor; demand payment of its amount, and upon receipt of the money, deliver up the bill ; that the accept- or paying the bill, had a right to the possession of the instrument for his own security, and as his discharge and voucher pro tanto in his account with the drawer; that he who has lost the bill and cannot give the possession thereof to the acceptor, has not a legal right to require its payment; and that his remedy -must be to tender a sufficient indemnity to the acceptor, and if it be refused, then enforce payment in a Court of Equity. Since this adjudication, the Courts of Equity in England, have had no scruple in exercising jurisdiction in cases of lost bills and notes, giving adequate relief. thereon. See Macartney v. Graham, 2 Sim. 285. It is not surprising, that during the clashing of judicial decisions in England, similar differences and repugnances should have occurred in this country. In many, we believe in most of the states of the Union, suits on lost bills and notes are brought at law— in some they are brought in equity; but we are not aware of any adjudication, in any state having distinct Courts of law and equity, that such claims are not within the jurisdiction of a Court of Equity.
We do not decide whether an action on a lost bill or note can, or cannot be brought at law. When it is considered that all written engagements for the payment of money, whether with or without seal, whether payable to order, or not payable to order, are by our laws negotiable; that many of these, and among them the bank notes which constitute the currency of the state, are for sums too small to render them fit subjects of a controversy in a Court of Equity; that there may be a difference between the loss *10 properly so called, and the destruction of the negotiable instrument — nay between a demand against one who is ultimately chargeable thereon, and him, who on payment thereof, has a right to charge it, in account against another, — we should weigh well all the bearings and consequences of the adjudication of such a question, and make it, when it becomes necessary and is the direct point involved in the controversy, and not before. But however this may be, we have no difficulty in sustaining the jurisdiction of a Court of Equity. Accident is one of the peculiar and proper grounds upon which its aid may be rightfully invoked. It can give redress better suited to the nature of the controversy; more safe for all the parties concerned, and rendering unnecessary an application to it from any of them for relief against a harsh judgment at law. If therefore the claim might have been prosecuted at law, it is nevertheless a proper subject of equitable cognizance. If it could not be sued on at law, it may be prosecuted in equity for that very reason.
The plaintiffs, having been the lawful owners and possessors of these notes, if the same have been lost or destroyed without their fault, have a right to recover what is justly due upon them. In the case of Walmsley v. Child, an objection was raised because of the import of the contract, the notes being payable to bearer, and transferable without assignment, but, observed the great Judge who decided that case, this “ is carrying it too far to say in any case, for undoubtedly one having lost his note or security, is no reason why he should lose his debt; but a note lost in that manner is a strong reason why the defendant should hold his hand and receive the fullest satisfaction that it would never be demanded of him.” But it is objected in the present case that the loss or destruction was occasioned by the voluntary act of the plaintiffs, and therefore they cannot any more in equity than at law, entitle themselves to demand payment thereof, without the presentation of the entire notes at the places where the same were payable. We think this objection unfounded. The cutting of a note into two parts, unless done with the intent to destroy the note, is not, of itself, a destruction of it. *11 While the two parts exist, and are retained by the lawful holder, the rights and liabilities of the parties remain precisely the same as before the division. If one of the parts be afterwards lost or destroyed, the right of the former holder of the note and the obligation of the maker are the same as though the whole note had been destroyed. Had the notes in this case been put .into the mail in their original state, and then the loss occurred, it might with equal plausibility have been urged, that the plaintiffs for their own convenience took upon themselves, the risk of loss, and can therefore demand payment only according to the letter of the engagement. If the law warranted such an usage as that alleged by the defendants, of paying upon a half note, by whomsoever presented, half the amount of the note, the risk of injury to one or the other of the parties, would be the same in the transmission by mail of a divided as of a whole note. In the former case, there would be indeed a double chance of casualties, but only the danger of half of a loss upon each casualty. Such an usage however is wholly unsupported by law. The holder of a half note, as such, has no right to any part of the money. Such an usage has a pernicious tendency to facilitate the receipt of money by the dishonest holders of half notes, and thereby creates or multiplies temptations to dishonesty. The transmission of divided notes by several mails diminishes the danger of injury as to one of the par- . ° J , . r ties, and does not increase it as to the other; is tor the benefit of commerce; affords additional security against dishonesty, by lessening the inducement to commit it, and ought in no manner to effect the rights of the lawful owners of the notes.
The usage of a abnkin paying * a haíf" note only amount of the note, is tioned by law> a“d cannot be sustained.
In England and in the states of this Union, the propriety of this course of remittance has been again and again recognised, and we cannot therefore admit, that the plaintiffs have lost the notes through their fault.
It has been seen that the parties differ materially as to the circumstances, under which payment of part of the money was made, and that we are without the means of ascertaining to whose representations, greater faith is due. Had the answer been on oath, it might have been evi *12 dence for the defendants. But it is not on oath, and therefore can be viewed only as a denial of the allegation of the plaintiffs, and as an allegation of facts on their side. It would seem, however, from the letters of Lemesurier, distinctly requesting, if the bank should not comply with the requisition made for a full payment, to return the half notes, that the first irregularity was on the part of the defendants in keeping these, and sending half the amount claimed. If a binding agreement could have been made (which we greatly doubt) to receive this sum in discharge of the whole claim, such an agreement is not proved. The time which elapsed before the filing of this bill is clearly not such as to affect the plaintiffs with laches, or to afford any valid objection to relief.
A biU filed two years after the loss of a bank note is not too late for relief.
A neglect to offer an indemnity before filing a bill does not destroy the plaintiff’s right, but it will deprive him of a claim for damages and costs.
The defendants had certainly a right to ask a satisfactory indemnity, and also prima facie evidence of the loss of the other half notes, before the plaintiffs could in conscience insist on payment.' No such evidence appears to have been given, and no such indemnity offered, before the filing of this bill. This omission does not destroy the right of the plaintiffs, but it affects their claim to damages and costs. Following the example in the old case of Tenesy v. Gory, we shall decree for them the unpaid part of the principal of the notes only, and the parties must respectively defray their own costs. The sum decreed to be paid, when bond shall be given in the penal sum of five hundred dollars, with such sureties as shall be approved by the clerk of this Court, with condition to save the defendants harmless from all claims for, or on account of, the notes set forth in the list annexed to the bill.
Per Curiam. Decree for the plaintiffs.